FILED
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

MAR 25 2025

TAMMY H. DOWNS, CLERK
By: _____
                    DEP CLERK

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF ARKANSAS

| | |
|---|---|
| DO NO HARM; FOUNDATION AGAINST INTOLERANCE & RACISM,<br><br>Plaintiffs,<br><br>v.<br><br>SARAH SANDERS, in her official capacity as Governor of the State of Arkansas,<br><br>Defendant. | No. 4:25-cv-282-LPR<br><br><br><br>COMPLAINT |

This case assigned to District Judge Rudofsky
and to Magistrate Judge Moore

## INTRODUCTION

1. Reflecting Arkansas's state motto—*regnat populus* ("the people rule")—Arkansas looks to ordinary citizens to serve on state boards, committees, and commissions. Many of them are open to a wide variety of citizens, but for some of these public boards, state law requires the Governor of Arkansas to consider an individual's race or ethnicity when making appointments. Two examples are the Arkansas State Occupational Therapy Examining Committee (OT Committee) and the Arkansas Board of Examiners in Counseling (Counseling Board).

2. The OT Committee assists the Arkansas State Medical Board in licensing and regulating the practice of occupational therapy in Arkansas. Service on the OT Committee requires U.S. citizenship and Arkansas residency. Three of the Committee's five seats are reserved for licensed occupational therapists. There is also a seat on the Committee reserved for a member of the general public who is sixty years old or older.

3. Similarly, the Counseling Board implements and enforces licensing requirements for counselors, marriage therapists, and family therapists. It reserves seats for licensed counselors, and one seat for a member of the "general public."

1

4. In addition to citizenship and residency requirements—and mandating a mix of practitioners and consumers—Arkansas law requires the Governor to appoint some members of the OT Committee and Counseling Board solely on account of their race or ethnicity. Such blatant discrimination serves no legitimate government purpose, let alone a compelling purpose. It is demeaning, patronizing, un-American, and unconstitutional.

5. Plaintiff Do No Harm is an organization of over 16,000 medical professionals, students, and policymakers dedicated to eliminating racial discrimination in healthcare. It has a member who is qualified, ready, willing, and able to be appointed to the OT Committee.

6. Plaintiff Foundation Against Intolerance and Racism, Inc., is a nationwide grassroots organization that fights for equality for all individuals regardless of racial group membership. FAIR has a member who is ready, willing, and able to be appointed to the Counseling Board.

## JURISDICTION AND VENUE

7. This action arises under the Fourteenth Amendment to the U.S. Constitution and 42 U.S.C. § 1983. This Court has jurisdiction over these federal claims under 28 U.S.C. § 1331 (federal question), and § 1343(a)(3) (redress for deprivation of civil rights). Declaratory relief is authorized by the Declaratory Judgment Act, 28 U.S.C. § 2201.

8. Venue is proper in this Court under 28 U.S.C. § 1391(b)(1), because Defendant resides in this district, and 28 U.S.C. § 1391(b)(2), because a substantial part of the events or omissions giving rise to the claim occurred and continue to occur in this district.

## PARTIES

9. Plaintiff Do No Harm (DNH) is a national nonprofit corporation headquartered in Glen Allen, Virginia. It is a membership organization of over 16,000 medical professionals, students, and policymakers. Its mission is to protect healthcare from a radical, divisive, and

discriminatory ideology. DNH's membership includes at least one individual who meets the legal requirements to serve on the OT Committee seat that represents the elderly.

10. Specifically, DNH Member "A" is older than sixty. Member A is not a member of a racial or ethnic minority. Member A is a U.S. citizen, resides in Arkansas, and is not actively engaged in or retired from the profession of occupational therapy. Member A is qualified, ready, willing, and able to be appointed to the OT Committee. Member A applied to serve on the OT Committee by sending an application to the Governor via an online portal on the Governor's website.

11. Plaintiff Foundation Against Intolerance and Racism, Inc. (FAIR), is a nonprofit organization established to defend the principle of equal protection and equal rights for all. FAIR seeks to ensure that diversity and inclusion efforts are non-discriminatory. FAIR also works at the grassroots level to promote a common culture based on equality and fairness. FAIR's membership includes at least one individual who meets the legal requirements to serve in the seat representing consumers on the Counseling Board.

12. FAIR Member "B" is a U.S. citizen and Arkansas resident. Member B is not a racial or ethnic minority. Member B is a member of the general public who is not licensed or licensable as a counselor, marriage and family therapist, or associate marriage and family therapist. Member B is also not actively engaged in or retired from the profession of counseling. Member B is ready, willing, and able to be appointed to the Counseling Board for the seat that represents consumers. Member B applied to serve on the Counseling Board by sending an application to the Governor via an online portal on the Governor's website.

13. Defendant Sarah Sanders is the Governor of the State of Arkansas. Arkansas law requires Governor Sanders to make all appointments to the OT Committee and Counseling Board.

Arkansas law also requires Governor Sanders to consider race when making appointments to the OT Committee and ethnicity/race when making appointments to the Counseling Board. Ark. Code § 17-88-202(b)(1) (OT Committee); Ark. Code § 17-27-201(b) (Counseling Board). Governor Sanders is sued in her official capacity only.

## FACTUAL ALLEGATIONS

### The OT Committee

14. The OT Committee assists the Arkansas State Medical Board with assessing the qualifications of individuals applying for occupational therapy licenses, administering examinations, and licensing those who qualify. Ark. Code § 17-88-201.

15. The OT Committee is comprised of five members that the Governor appoints. One of those members "shall represent the elderly." Ark. Code § 17-88-202(b)(4). That member must be 60 years old or older, a U.S. citizen, an Arkansas resident, and must "not be actively engaged in or retired from the profession of occupational therapy." *Id.* In addition, three members must be Arkansas-licensed occupational therapists, § 17-88-202(b)(2), and one member who represents "consumers" must not be "engaged in or licensed to practice as an occupational therapist," § 17-88-202(b)(3).

16. When the Governor appoints individuals to these five seats on the OT Committee, Arkansas law commands that at least "One (1) member shall be a member of a minority race." § 17-88-202(b)(1).

### Current and Future Vacancies on the OT Committee

17. There is currently one vacancy on the OT Committee for someone 60 or older to occupy the seat representing the elderly.

4

18. One of the three seats for licensed occupational therapists is vacant. Another occupational therapist seat is occupied by a committee member who is Caucasian but his term expired on March 1, 2025. The third seat for occupational therapists is occupied by someone who may be a racial minority, but his term expired on March 1, 2024, so he is serving as a holdover and does not satisfy the statutory race quota.

19. The seat for a member representing consumers is occupied by a Caucasian until March 1, 2026.

20. No members of the OT Committee serving active terms are racial minorities.

21. Thus, the Governor must consider a potential Committee member's race when deciding whom to appoint to the OT Committee. Specifically, because the OT Committee is currently composed only of Caucasian members, the Governor must give preference to candidates who are a racial minority.

22. The Governor makes appointments to the OT Committee at unpredictable times.

23. Openings can also occur unpredictably in the event of a resignation, removal, or death of a Committee member.

24. DNH Member A is qualified, willing, and able to be appointed to the OT Committee for the current vacancy on the seat representing the elderly—as well as future openings—but is disfavored for appointment on account of Member A's race. Member A has submitted an application to the Governor to serve on the OT Committee.

25. So long as the race-based mandate remains in place, DNH Member A will not receive equal consideration for openings on the OT Committee.

**The Counseling Board**

26. The Counseling Board regulates and licenses counselors, marriage therapists, and family therapists. The Counseling Board also promulgates regulations, investigates allegations of misconduct, and disciplines licensees that violate its rules or regulations. Ark. Code § 17-27-203.

27. The Counseling Board is comprised of nine members appointed by the Governor who must all be U.S. citizens and Arkansas residents. Ark. Code § 17-27-201(b).

28. One member must be "from the general public who is not licensed or licensable and not actively engaged in or retired from the profession of counseling" and "shall represent consumers." § 17-27-201(c)(1)(C).

29. Three members must be licensed counselors who are "practicing counselors." § 17-27-201(c)(1)(A)(i).

30. Another three of the Board's members must be licensed counselors who are "counselor educators." § 17-27-201(c)(1)(A)(i).

31. One Board member must be a licensed marriage and family therapist. § 17-27-201(c)(1)(B)(i).

32. One Board seat is for a member of the general public who is 60 years old or older and "who shall represent the elderly." § 17-27-201(c)(1)(D)(i).

33. In addition, appointments to the Board "shall be made so as to ensure that the Arkansas Board of Examiners in Counseling consists of . . . at least one (1) member of an ethnic minority." § 17-27-201(b).

**Current and Future Vacancies on the Counseling Board**

34. Seven of the nine seats on the Counseling Board are currently vacant. Five of those seven seats have holdover members with expired terms, including the consumer representative seat

and the seat representing the elderly. The other two of those seven vacant seats do not have any holdovers.

35. The Counseling Board's only two members with unexpired terms are all Caucasian.

36. Thus, the Governor must consider a potential Board member's ethnicity/race as a factor in making her appointment decisions. Specifically, when considering who to appoint to the Counseling Board which is currently composed only of Caucasian members, the Governor must give preference to candidates who are "ethnic minorities." § 17-27-201(b).

37. The Governor makes appointments to the Board at unpredictable times.

38. Openings can also occur unpredictably in the event of a resignation, removal, or death of a Board member.

39. FAIR Member B is qualified, willing, and able to be appointed to the Counseling Board for the current consumer representative vacancy, but Member B is disfavored for appointment on account of Member B's ethnicity/race. Member B has submitted an application to the Governor to serve on the Counseling Board.

40. So long as the quota based on ethnicity/race remains in place, FAIR Member B will not receive equal consideration for openings on the Counseling Board.

## CLAIMS FOR RELIEF

### First Cause of Action

### Arkansas Code § 17-88-202(b)(1) (OT Committee) Violates the Fourteenth Amendment's Equal Protection Clause

41. Plaintiff DNH hereby realleges and incorporates by reference the allegations contained in Paragraphs 1 through 40.

42. An actual and substantial controversy exists between Plaintiff DNH and Defendant. Plaintiff DNH's Member A has a right to seek appointment to the OT Committee free from consideration of Member A's race.

43. Under the Fourteenth Amendment to the U.S. Constitution, "[n]o State shall... deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1.

44. Ark. Code § 17-88-202(b)(1) requires the Governor to consider and make decisions on the basis of the race of potential Committee members when making appointments to the OT Committee because the statute reserves at least one seat on the Committee for a racial minority.

45. Governmental classifications on the basis of race violate the Equal Protection Clause unless they are narrowly tailored to a compelling governmental interest.

46. The racial mandate in section 17-88-202(b)(1) does not serve a compelling government interest.

47. The racial mandate in section 17-88-202(b)(1) does not remediate any specific instances of racial discrimination that violated the Constitution or statutes.

48. Even if the racial mandate in section 17-88-202(b)(1) served a compelling government interest, it is not narrowly tailored to remediate past intentional discrimination.

49. The racial mandate in section 17-88-202(b)(1) stereotypes individuals on the basis of race, treats all individuals of different races as fungible, mandates racial preferences, has no "good faith exception," and has no end date.

50. Plaintiff DNH has no adequate remedy at law to compensate for the loss of its member's equal protection rights and will suffer irreparable injury absent an injunction prohibiting Defendant's enforcement of section 17-88-202(b)(1).

8

51. Plaintiff DNH is therefore entitled to prospective declaratory and permanent injunctive relief against continued enforcement of section 17-88-202(b)(1).

## Second Cause of Action

### Arkansas Code § 17-88-202(b)(1) (OT Committee) Violates the Fourteenth Amendment's Citizenship Clause

52. Plaintiff DNH hereby realleges and incorporates by reference the allegations contained in Paragraphs 1 through 40.

53. The Fourteenth Amendment to the U.S. Constitution provides: "All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and the State wherein they reside." U.S. Const. amend. XIV, § 1.

54. The Citizenship Clause guarantees all the rights of citizenship to every citizen of the United States, including all the rights of citizenship of the state wherein he or she resides.

55. The right to hold public office, including service on state boards, committees, and commissions, is a right of citizenship.

56. Ark. Code § 17-88-202(b)(1) requires the Governor to deny to some Arkansas citizens a right of citizenship while extending that right to others.

57. The denial of a right of citizenship to a citizen of the United States violates the Citizenship Clause of the Fourteenth Amendment and is subject to heightened judicial scrutiny.

58. Plaintiff has no adequate remedy at law to compensate for the loss of its member's equal citizenship rights and will suffer irreparable injury absent an injunction prohibiting Defendant's enforcement of section 17-88-202(b)(1).

59. Plaintiff DNH is therefore entitled to prospective declaratory and permanent injunctive relief against continued enforcement of section 17-88-202(b)(1).

## Third Cause of Action
## Arkansas Code § 17-27-201(b) (Counseling Board) Violates
## the Fourteenth Amendment's Equal Protection Clause

60. Plaintiff FAIR hereby realleges and incorporates by reference the allegations contained in Paragraphs 1 through 40.

61. An actual and substantial controversy exists between Plaintiff FAIR and Defendant. Plaintiff FAIR's Member B has the right to seek appointment to the Counseling Board free from consideration of Member B's ethnicity/race.

62. Under the Fourteenth Amendment to the U.S. Constitution, "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1.

63. Ark. Code § 17-27-201(b) requires the Governor to consider and make decisions on the basis of the ethnicity/race of potential board members when making appointments to the Counseling Board.

64. Governmental classifications on the basis of ethnicity or race violate the Equal Protection Clause unless they are narrowly tailored to a compelling governmental interest.

65. The ethnicity/racial mandate in section 17-27-201(b) does not serve a compelling government interest.

66. The ethnicity/racial mandate in section 17-27-201(b) does not remediate any specific instances of ethnic/racial discrimination that violated the Constitution or statutes.

67. Even if the ethnic/racial mandate in section 17-27-201(b) served a compelling government interest, it is not narrowly tailored to remediate past, intentional discrimination.

68. The ethnic/racial mandate in section 17-27-201(b) stereotypes individuals on the basis of ethnicity and race, treats all individuals of different ethnicities and races as fungible,

mandates ethnic/racial preferences, requires ethnic/racial balancing, has no "good faith exception," and has no end date.

69. Plaintiff FAIR has no adequate remedy at law to compensate for the loss of its member's equal protection rights and will suffer irreparable injury absent an injunction prohibiting Defendant's enforcement of section 17-27-201(b).

70. Plaintiff is therefore entitled to prospective declaratory and permanent injunctive relief against continued enforcement of section 17-27-201(b).

### Fourth Cause of Action
### Arkansas Code § 17-27-201(b) (Counseling Board) Violates the Fourteenth Amendment's Citizenship Clause

71. Plaintiff FAIR hereby realleges and incorporates by reference the allegations contained in Paragraphs 1 through 40.

72. The Fourteenth Amendment to the U.S. Constitution provides: "All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and the State wherein they reside." U.S. Const. amend. XIV, § 1.

73. The Citizenship Clause guarantees all the rights of citizenship to every citizen of the United States, including all the rights of citizenship of the state wherein he or she resides.

74. The right to hold public office, including service on state boards, committees, and commissions is a right of citizenship.

75. Ark. Code § 17-27-201(b) requires the Governor to deny to some Arkansas citizens a right of citizenship while extending that right to others.

76. The denial of a right of citizenship to a citizen of the United States violates the Citizenship Clause of the Fourteenth Amendment and is subject to heightened judicial scrutiny.

77. Plaintiff FAIR has no adequate remedy at law to compensate for the loss of its member's equal citizenship rights and will suffer irreparable injury absent an injunction prohibiting Defendant's enforcement of section 17-27-201(b).

78. Plaintiff FAIR is therefore entitled to prospective declaratory and permanent injunctive relief against continued enforcement of Ark. Code § 17-27-201(b).

## REQUEST FOR RELIEF

Plaintiffs respectfully request the following relief:

A. A declaration that the racial mandate in Ark. Code § 17-88-202(b)(1) (OT Committee) and the ethnic/racial mandate in section 17-27-201(b) (Counseling Board) violate the Equal Protection Clause and Citizenship Clause of the Fourteenth Amendment to the U.S. Constitution;

B. A permanent injunction forbidding Defendant and Defendant's agents, contractors, and employees from enforcing, or attempting to enforce, the racial mandate in Ark. Code § 17-88-202(b)(1) (OT Committee) and the ethnic/racial mandate in section 17-27-201(b) (Counseling Board);

C. An award of attorneys' fees, costs, and expenses in this action pursuant to 42 U.S.C. § 1988; and

D. Such other relief as the Court deems just, necessary, or proper.

DATED: March 24, 2025                    Respectfully submitted,

/s/ Jeffrey D. Jennings

Jeffrey D. Jennings,
TX. Bar No. 24129027
Attorney for Plaintiff
PACIFIC LEGAL FOUNDATION
3100 Clarendon Blvd., Suite 1000
Arlington, VA 22201
(Mailing address only)
Telephone: (202) 888-6881
Email: JJennings@pacificlegal.org

Whitfield Hyman
Ark. Bar No. 2013237
Attorney for Plaintiff
KING LAW GROUP, PLLC
300 North 6th Street
Fort Smith, AR 72901
Telephone: (479) 782-1125
Email: hyman@arkansaslawking.com

*Attorneys for Plaintiffs*